## KROLLER et al. v. DELAWARE RIVER STEEL CO.

### No. 4259.

Circuit Court of Appeals, Third Circuit.

Sept. 19, 1930.

Francis Rawle and Jos. W. Henderson, both of Philadelphia, Pa., for appellants.

Wm. J. Conlen and Geo. E. Beechwood, both of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

DAVIS, Circuit Judge.

This is an appeal from a judgment of nonsuit entered against the plaintiffs.

On February 13, 1926, the appellants, who were plaintiffs below, entered into a contract with the defendant company whereby plaintiffs sold to defendant a "full steamer cargo of about 5,000 or 6,000 tons of iron ore to be delivered f. o. b. on cars on the defendant's wharf at Chester, the defendant agreeing to discharge the cargo itself, but at the expense of the plaintiffs."

The defendant agreed, upon the arrival of the vessel, to accept the plaintiffs' ninety-day sight draft against documents covering the seller's provisional invoice of 80 per cent. of the value, based on ocean bill of lading weight and 50 per cent. of iron in the ore, the residue to be paid after weight was known and analysis made upon presentation of final invoice.

The contract provided that: "In making a c. i. f. sale, the tender to the purchaser or his authorized agent of shipping documents, consisting of proper bills of lading and negotiable insurance certificates, shall constitute full and final delivery."

The contract further provided that the defendant or its nominees should discharge the cargo at a fixed price per ton at the rate of 1,000 tons per working day, Sundays and holidays excepted, or, if it failed to do so, to refund to plaintiffs demurrage or loss of dispatch as per plaintiffs' charter party.

On March 17, 1926, plaintiffs entered into a charter party with E. A. Stavroudis, owner of the steamship Stavroudis, to carry a cargo of iron from Algeria to Philadelphia (including Chester) "and there deliver the same as customary, when, where, and as directed by the consignee." It was agreed that the cargo should be discharged at the rate of 1,500 tons per clear working day of 24 consecutive hours, Sundays and holidays excepted. Demurrage was to be at the rate of three pence per ton running day on the total quantity of cargo delivered.

The vessel with her cargo of iron sailed from Algeria on April 7, 1926, and came to anchor in the Delaware river at Chester, Pa., at 3:30 in the afternoon on May 3, 1926. On May 4, 1926, she was ready to unload her cargo, but at that time the defendant's wharf, which could handle only one ship at a time, was occupied by another steamer. The Stavroudis lay there unable to dock until May 12, 1926, when the defendant notified the master that a berth would probably be furnished on Friday, May 14, but she was not able to dock until 3:30 p. m. on May 15, 1926.

As a result of the delay in unloading, the plaintiffs were compelled, under attachment levied on the cargo, to pay the shipowner demurrage in the amount of $4,406.48 as provided in the charter party. Under the charter party the plaintiffs were allowed 4 days, 17 hours, and 54 minutes for loading, but it only took 1 day, 16 hours, and 30 minutes to load, so that there was a credit due plaintiffs of 3 days, 1 hour, and 24 minutes.

The charter party required the vessel to be unloaded at the same rate at which she was loaded, 4 days, 17 hours, and 54 minutes, to which should be added the time saved in loading of 3 days, 1 hour, and 24 minutes, making a total allowance for unloading of 7 days, 19 hours, and 18 minutes. When the proper deductions were made, the time of demurrage over the allowance was 10 days, 4 hours, and 32 minutes at the rate of three pence per ton, which amounts to $4,406.48 which plaintiffs paid. There is practically no dispute about these figures, the only dispute being as to who should pay it.

The plaintiffs brought the suit against the defendant for this amount, and, at the conclusion of the trial, the court entered a nonsuit against the plaintiffs on the ground that the defendant was not liable for the delay while waiting for an opportunity to dock, because "there was no obligation on the part of the defendant to provide a berth or other place for the discharge of the cargo."

The plaintiffs appealed to this court, and the question for determination is upon whom the duty of providing a berth at which the vessel could dock and unload rested under the evidence in this case.

There does not appear to have been any particular wharf designated in the contract or charter party at which the steamer was to dock, at Chester, Pa., though it seems to have been understood by them that she was to unload at the defendant's wharf, for it was to this wharf that the vessel came. The plaintiffs say that "the defendant ordered the 'Stavroudis' to that (defendant's) wharf, but notified the Master that it was then occupied by another vessel." The defendant says that, "when the ship arrived at Philadelphia, the plaintiffs ordered it to dock at defendant's wharf." It is stated in the record that the plaintiff, William H. Mueller & Co., The Hague, Holland, notified Soberman & Co., its agents, that the steamer was to be discharged "at the plant of the Delaware River Steel

Company." But, as above stated, it does not expressly appear who selected the particular plant and wharf as the place at which the vessel was to discharge her cargo nor when it was selected.

The contract of sale provides for the delivery of the cargo *to the defendant at Chester*, Pa., and not to the *defendant at a particular wharf*. The language of the contract as to the place of delivery is "c. i. f. Chester, Pa., steamer paying costs of discharging on to cars." This means that the plaintiff was to deliver the ore to the defendant at Chester into its cars. No wharf was designated.

As above stated, the contract provided that: "Sellers and buyers agree to employ buyers or their nominees to do the discharging of the ore delivered under this contract at Chester, Pa. Sellers will pay buyers for the discharging a rate of 55¢ per gross ton discharged and buyers guarantee to sellers to discharge the steamer at a minimum rate of 1000 tons per working day. Sundays and holidays excepted, or if they fail to do so, refund to sellers demurrage or loss of despatch as per sellers charter-party."

Therefore, when the vessel with its cargo arrived at Chester and was ready to unload, it was the duty of the defendant to discharge the cargo, and, in order to do so, it was necessary to have a wharf at which the vessel could unload. Implicit in this c. i. f. contract to discharge the cargo was the duty to furnish the wharf and, if the defendant did not do so, it is liable for the resulting demurrage.

The contract refers to this sale as a c. i. f. sale, by which is meant a sale free of cost, insurance, and freight, that is, that the price fixed covered not only the cost of the ore, but also insurance and freight. It states that: "In making a c. i. f. sale, the tender to the purchaser or his authorized agent of shipping documents, consisting of proper bills of lading and negotiable insurance certificates shall constitute full and final delivery."

On May 3, 1926, when the vessel arrived at Chester, the defendant accepted the plaintiffs' ninety-day sight draft against documents covering the plaintiffs' original invoice for 80 per cent. of the value, based upon the ocean bill of lading weight, accompanied by the ocean bill of lading, consular invoice, and certificates of insurance. The bill of lading was indorsed over to the defendant, together with the other accompanying documents. Accordingly the acceptance of these papers under the agreement to discharge the cargo con-stituted full and final delivery of the cargo to the defendant, although the final payment of the balance due was not to be made until "after weight and analysis are known upon presentation of final invoice." It thereafter became the duty of the defendant to furnish a wharf and cars. It did not do so, and it is consequently liable for demurrage caused by the delay.

The judgment is reversed and a new trial awarded.